BLUE, Appellant, v. PENNISTON, INTERPLEADER, Respondent.

1. Where a suit is commenced by attachment on a promissory note and a person interpleads claiming the property attached as trustee for the wife of the defendant in the attachment, by virtue of a deed executed and recorded two years before the date of the note sued on, the plaintiff may show that the note sued on was given for a debt that existed before the execution of said deed.

2. The acts of the grantor (the father of the *cestui que trust* in said deed) and her husband (the defendant in the attachment suit) in selling certain of the slaves embraced in said deed, are competent evidence as bearing upon the question of fraud in its execution.

### Appeal from Linn Circuit Court.

This was a suit by attachment upon a promissory note executed by John K. Kerr, dated February 20, 1845. A negro woman and her two children were attached as the property of said Kerr. Francis P. Penniston interpleaded, claiming said slaves as trustee for Mrs. Kerr, by virtue of a deed executed by Robert P. Penniston, the father of Mrs. Kerr. This deed was dated February 28, 1843. It was acknowledged and recorded the day of its date, and conveyed certain slaves to said interpleader in trust for the separate use of Mrs. Kerr. Evidence was introduced showing that the slaves embraced in said deed had been in possession of said John K. Kerr for several years before the date of said deed. Evidence was also introduced bearing upon the question whether there had been a gift of said slaves to Mrs. Kerr. The plaintiff offered to show that the note sued on was given for a debt that existed previous to the execution of the said trust deed of R. P. Penniston. The court refused to permit the evidence to be introduced.

The court, among other instructions given at the instance of the interpleader, gave the following: " 3. The acts of Robert Penniston and John K. Kerr in selling Ellen, one of the slaves mentioned in the deed, are no evidence to invalidate the deed."

The jury rendered a verdict for the interpleader.

*Harris*, for appellant.

I. The court erred in excluding the evidence offered by plaintiff. He should have been permitted to show that the debt for which the note was given was contracted prior to the execution of the deed of trust. (James v. Briscoe, 24 Mo. 504; 4 McCord, 232.)

II. The court erred in giving and refusing instructions. (5 Mo. 493; 13 Mo. 67; 24 Mo. 504; 22 Mo. 341; 7 Mo. 249.)

*Prewitt*, for respondent.

I. It is immaterial whether the debt sued on was created before or after the execution of Penniston's deed. The question in issue was whether the father had given the slaves to his daughter some two or three years before making the deed. The plaintiff should have shown the materiality of the offered testimony. (15 Mo. 244.)

II. The third instruction was correct. The court did not err in giving or refusing instructions. (R. C. 803; 16 Mo. 114; 25 Mo. 301; 14 Mo. 354; 25 Mo. 301; Hill on Trustees, 419.)

NAPTON, Judge, delivered the opinion of the court.

Upon a more careful examination of the case since the argument, we have not been convinced of the propriety of excluding the testimony offered to show the true date of the plaintiff's debt. The evidence, it is conceded, was competent, and the only ground of its exclusion was irrelevancy. This is rather unsafe ground when the question at issue is one of fraud—a matter about which there is seldom to be

found direct and positive proof. The only question in this case was, whether the deed of Robert Penniston was an after-thought, a contrivance to defraud some creditor or creditors of Kerr. To enable the plaintiff in the attachment to make any headway in establishing this allegation, it would of course be very material for him to show that Kerr was in debt at the time of the execution of the deed. The note upon which suit was brought was dated after the deed, and, without explanation, upon the face of the transaction alone, it would be rather an up-hill labor to convince a jury that a deed made nearly two years before the debt was intended as a fraud upon the creditor. To get a starting point for an attack upon the deed, it was essential for the plaintiff to show that the debt was really due two or three years before the note was given, and this is the evidence which was offered and excluded.

In connection with this point, we may also express our doubts of the propriety of the third instruction which the court gave for the interpleader. In this instruction, the court declared the acts of Robert Penniston and John K. Kerr, in selling certain slaves enumerated in the deed some time after it was executed, were no evidence to invalidate the deed. This instruction virtually excluded the testimony on this point from the jury. Undoubtedly the acts of the father and the husband could not and ought not to affect any vested interest of the wife and daughter; but it will be observed that the question really at issue was, whether Mrs. Kerr had any interest; in other words, whether the deed was *bona fide* and valid, or a mere contrivance to defraud Kerr's creditors. The acts of Kerr and the father, who was the maker of the deed, are introduced to bear on the question, to explain the character of the original transaction. What weight such evidence would have is another question. It may be admitted that by itself it would be entitled to but little; but in questions of this nature—mostly explained by circumstances in themselves perhaps trivial, remote and dis-

connected, but when combined and brought together capable of tending to as satisfactory conclusions as the most plain and direct evidence—it will not devolve on the court presiding over the trial to exclude each piece of detached evidence, as it is offered, because of its insufficiency or its apparent irrelevancy. It may be that the evidence is so unsatisfactory to the court that a verdict found on it would be set aside; but even this we do not conceive will warrant the judge in excluding it. If it is competent and has a tendency to explain the issue, it ought to be received; and when the whole case is put to the jury and acted on, it will be proper for the court to say whether a verdict based on the evidence will be permitted to stand. With the concurrence of Judge Scott, the judgment is reversed and case remanded.